FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2018

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LOUIE B., | No. 2:17-cv-00267-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER - 3

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 4

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## DISABLED WIDOW'S BENEFITS

In order to be entitled to disabled widow's benefits, a claimant must establish, among other things, that she is at least 50 years of age, unmarried unless an exception set forth in 20 C.F.R. § 404.335(e) applies, and a widow of a wage earner who died fully insured. She must be found disabled no later than seven years after the spouse's death. *See* § 404.335(c). She must establish that she has physical or mental impairments that result in disability as defined in 42 C.F.R. § 404.1505. *Id.* The definition of disability for disabled widow's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widow's benefits cases. *See* 20 C.F.R. § 404.1505(a) and § 404.1520(a)(4)(i)–(v).

## ALJ'S FINDINGS

On May 6, 2015, Plaintiff applied for disabled widow's benefits, alleging disability onset on January 1, 2010. Tr. 180-83. Benefits were denied initially, Tr. 107-11, and upon reconsideration. Tr. 114-16. Plaintiff appeared for a hearing

before an administrative law judge (ALJ) on October 25, 2016. Tr. 39-79. On December 2, 2016, the ALJ denied Plaintiff's claims. Tr. 17-38.

At the outset, the ALJ concluded that Plaintiff's date last insured was November 30, 2016. Tr. 20, 22. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease; bilateral shoulder impingement; depressive disorder, NOS; anxiety disorder, NOS; PTSD; and borderline personality disorder. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [S]he cannot climb ladders, ropes, or scaffolds; she can only occasionally stoop; and she can frequently perform all other postural activities; she can only occasionally reach overhead with the bilateral upper extremities; she can have no exposure to hazards such as moving mechanical parts and unprotected heights; she is limited to simple, routine and repetitive tasks with reasoning level of 2 or less; she needs a routine, predictable work environment that requires no more than simple decision-making; and she can have only occasional, superficial contact with the public.

Tr. 27. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 31. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy

ORDER - 7

that Plaintiff could perform, such as production assembler, electronics worker, and agricultural produce sorter. Tr. 32. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2010 through the date of the decision. *Id.*

On June 8, 2017, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disabled widow's benefits under Title II of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for review:

1. Whether the ALJ's RFC is supported by substantial evidence; and

2. Whether the ALJ properly identified Plaintiff's severe impairments at step two.

*See* ECF No. 15 at 5-15.

## DISCUSSION

Plaintiff argues generally that substantial evidence in the record does not support the ALJ's RFC formulation and step two finding. ECF No. 15 at 5-15. Plaintiff urges this Court to evaluate Plaintiff's symptom testimony, certain medical opinion evidence, and the lay testimony, and thus invites the Court to re-

ORDER - 8

weigh the evidence of record. The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)).

In support of her arguments that the ALJ's RFC is not supported by substantial evidence and that the ALJ improperly assessed her severe impairments at step two, Plaintiff asserts that the ALJ should have more heavily relied on Plaintiff's symptom complaints, the 2015 opinion of Dr. Cline, and lay evidence from her prior employer. However, the ALJ evaluated and discredited this evidence. Plaintiff largely failed to challenge the ALJ's evaluation of this evidence and thus, any challenges are waived and the Court may decline to review them. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

**A. Plaintiff's Symptom Complaints**

In support of her argument that the ALJ's decision is not supported by substantial evidence, Plaintiff generally contends the ALJ should have relied more heavily on her symptom complaints and her symptom testimony in assessing the severity of her impairments at step two and in assessing her RFC. ECF No. 15 at 5-15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing Plaintiff's symptom claims, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of her symptoms was not entirely consistent with the evidence in the record. Tr. 28. Here, Plaintiff failed to challenge any of the reasons cited by the ALJ in support of his finding that Plaintiff's symptom complaints were not entirely credible, thus, any challenges are waived and the Court may decline to review

them.  *See Carmickle*, 533 F.3d at 1161 n.2.  However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support his finding.  Tr.  28-30.

### 1. Lack of Objective Medical Evidence-Physical Impairments

The ALJ found that the objective medical evidence did not support the level of limitation Plaintiff alleged regarding her physical impairments.  Tr. 28-29.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c) (2011).  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that Plaintiff alleged disability as of January 2010 because of arthritis, fibromyalgia, bulging discs, general neck, back, and shoulder problems, which she asserted limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands.  Tr. 27 (citing Tr. 201-09, 224-31).  Plaintiff alleged that she has debilitating migraines that cause dizziness and black outs; that

ORDER - 12

insomnia causes her to be tired and have no energy, that asthma affects her stamina; and that she is bedridden several days at a time. Tr. 27. Here, the ALJ specifically noted that Plaintiff's physical examinations were largely unremarkable with only mild to occasionally moderate findings, and set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling physical limitations. Tr. 28. For example, Plaintiff generally demonstrated a normal gait and station, full 5/5 strength in the upper and lower extremities, no neurological deficits, no motor deficits, intact sensation, and MRI, nerve conduction studies, and EMG had normal results. Tr. 28 (citing *e.g.*, Tr. 424, 434, 483, 485, 488, 536-37, 539). The ALJ reasonably concluded that Plaintiff's physical limitations were not supported by the medical evidence. This was a clear and convincing, and unchallenged, reason to find Plaintiff's symptom complaints less than credible.

### 2. *Lack of Objective Medical Evidence-Mental Impairments*

Similarly, the ALJ found that Plaintiff's allegations of disabling mental health impairments were not consistent with the objective medical evidence. Tr. 28-29. For example, the ALJ noted that Plaintiff's mental status examinations were largely unremarkable, with a normal mood and affect, normal behavior, normal thought processes, good insight and judgment, and a normal memory, with minimal abnormal findings. Tr. 29 (citing *e.g.*, Tr. 421, 424, 426, 428, 431, 483, 485, 488, 604). Moreover, the ALJ noted that Plaintiff alleged that her

psychological symptoms were long-standing and present through her 30s and 40s when she sustained work.  Tr. 28.  The ALJ found that the ability to work with the impairments indicated they were not particularly significant.  Tr. 28.  Working with an impairment supports a conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling).  Finally, the ALJ noted that Plaintiff's allegations of disabling mental health limitations were inconsistent with her lack of ongoing mental health treatment.  Tr. 29.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  These were clear and convincing, and unchallenged reasons, for the ALJ to discount Plaintiff's symptom claims.

   *3.  Daily Activities*

   Next, the ALJ found that Plaintiff's allegations of disabling limitations were inconsistent with her activities of daily living.  Tr. 29.  Evidence about daily activities is properly considered in making a determination regarding Plaintiff's symptom claims.  *Fair*, 885 F.2d at 603.  However, a claimant need not be utterly incapacitated in order to be eligible for benefits.  *See Orn*, 495 F.3d at 639 ("the

mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability.").  Regardless, as in this case, "[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113. Here, the ALJ noted that Plaintiff "has very high functioning activities of daily living."  Tr. 29.  The ALJ specifically noted that Plaintiff lives alone, enjoys horseback riding, gardening, and barn chores; and she is able to cook and clean. Tr. 29 (citing Tr. 224-39).  The ALJ noted that throughout much of the relevant period, she was engaged in part-time work caring for large animals and lifting 50 plus pounds.  Tr. 29.  The ALJ noted that Plaintiff testified to this day, she is still able to do light horseback riding, care for three horses (feeding, watering, exercising), lead a 4H group that she started, work as a riding instructor, groom horses, and do light cleaning in horse stalls.  Tr. 29 (referring to Tr. 49-53).  The ALJ reasonably concluded Plaintiff's daily activities were "wholly inconsistent with [Plaintiff's] allegations of disabling pain and functional limitations.  Tr. 29. This was a clear and convincing, and unchallenged reason, for the ALJ to discount Plaintiff's symptom claims.

Here, the ALJ reasonably declined to rely on Plaintiff's symptom in assessing the severity of her impairments at step two and her RFC.

ORDER - 15

## B. Medical Opinion Evidence

In support of Plaintiff's contention that the ALJ's RFC is not supported by substantial evidence, Plaintiff contends the ALJ should have relied on Dr. Cline's 2015 assessment.  ECF No. 15 at 8-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *See Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

In December 2015, Dr. Cline evaluated Plaintiff, diagnosed Plaintiff with borderline personality disorder, PTSD, and unspecified depressive disorder, and opined Plaintiff has marked limitations in her abilities to maintain appropriate behavior in a work setting and complete a normal work day and work week without interruptions from psychological based symptoms. Tr. 472-76. In November 2016, Dr. Cline again evaluated Plaintiff and diagnosed Plaintiff as malingering and was unable to assess Plaintiff's functional limitations. Tr. 652-57.

The ALJ assigned little weight to Dr. Cline's 2015 opinion. Tr. 30. Because Dr. Cline's opinion was contradicted by state agency consultants Dr. Ju, 85-89, and Dr. Nicoloff, 99-103, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Cline's opinion was provided in a check box form that provided little explanation to support the degree of limitation alleged. Tr. 30. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996);

*Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, Dr. Cline provided minimal explanation for the limitations assessed. Tr. 473-75. This was a specific and legitimate and unchallenged reason for rejecting her opinion.

Next, the ALJ found that Dr. Cline's opinion was not consistent with the longitudinal medical record. Tr. 30. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ specifically noted that the opinion was inconsistent with the medical record, which showed minimal mental health treatment, minimal mental health complaints over time, and the largely benign mental status findings documented in the record discussed *supra*. Tr. 30. This was another specific and legitimate and unchallenged reason for rejecting her opinion.

Finally, the ALJ noted that Dr. Cline appears to have reversed the opinion in the 2016 evaluation, concluding at that time Plaintiff was malingering and could

not be diagnosed with any other psychological condition. Tr. 30. The ALJ concluded that this cast doubt on Dr. Cline's initial opinion. Tr. 30. Evidence that a claimant exaggerated her symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas,* 278 F.3d at 958. The ALJ reasonably declined to rely on Dr. Cline's prior 2015 opinion given the fact that Plaintiff was identified as malingering in the November 2016 evaluation with the same provider. Even if the ALJ erred in this analysis, such error is harmless because the ALJ provided other specific and legitimate and unchallenged reasons to discredit Dr. Cline's opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the ... error was inconsequential to the ultimate nondisability determination.").

The ALJ did not err in failing to rely on Dr. Cline's 2015 opinion in assessing Plaintiff's mental RFC.

**C. Lay Witness Testimony**

Plaintiff contends that the ALJ should have relied more heavily on the lay evidence from her prior employer. ECF No. 15 at 7. Plaintiff's prior employer, Dr. Inice Gough, submitted a letter indicating that Plaintiff's ability to perform her job duties deteriorated after her husband's unexpected death in November 2009; specifically, she was unable to arrive on time and perform tasks such as patient accounting and scheduling appointments. Tr. 504. The ALJ "did not assign

significant weight" to the opinion.  Tr. 30.  Plaintiff fails to challenge the ALJ's

evaluation of Dr. Gough's lay opinion, thus, any challenge is waived.  *See*

*Carmickle*, 533 F.3d at 1161 n.2.  However, upon review, the Court finds that the

ALJ provided germane reasons, supported by substantial evidence, to support his

finding.

An ALJ must consider the testimony of lay witnesses in determining

whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

1053 (9th Cir. 2006).  Lay witness testimony cannot establish the existence of

medically determinable impairments, but lay witness testimony is "competent

evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20

C.F.R. § 404.1513 (2013); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th

Cir. 1993) ("[F]riends and family members in a position to observe a claimant's

symptoms and daily activities are competent to testify as to her condition.").  If lay

testimony is rejected, the ALJ "'must give reasons that are germane to each

witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*,

12 F.3d at 919).

First, the ALJ found Dr. Gough's opinion was based on observations made

outside of the relevant period.  Tr. 30.  Evidence that predates the alleged onset of

disability is of limited relevance.  *See Carmickle*, 533 F.3d at 1165.  Dr. Gough's

opinion addresses Plaintiff's work performance in the "several months" following

the death of Plaintiff's husband. Plaintiff's husband died on November 26, 2009.

Tr. 20. Plaintiff's alleged onset date is January 1, 2010. *Id.* Therefore, it is

appears that Dr. Gough's opinion does address Plaintiff's functioning after her

alleged onset date. However, even if the ALJ erred in this analysis, such error is

harmless because the ALJ provided other germane reasons, discussed *infra*, to

discredit Dr. Gough's opinion. *See Tommasetti*, 533 F.3d at 1038.

Second, the ALJ found Dr. Gough's opinion was inconsistent with the

medical evidence. Tr. 30. Inconsistency with the medical evidence is a germane

reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v.

Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include

inconsistency with medical evidence, activities, and reports). The ALJ observed

that Dr. Gough's opinion was inconsistent with the objective medical evidence,

including Plaintiff's performance on mental status examinations, her prior ability

to work with these impairments, and her lack of engagement in ongoing treatment.

Tr. 29-30. This was a germane reason to discredit Dr. Gough's opinion. The

ALJ's conclusion is supported by substantial evidence.

**D. Step Two**

Plaintiff contends the ALJ erred by failing to identify migraine headaches as

a severe impairment at step two. ECF No. 15 at 10-15. Specifically, Plaintiff

contends that her testimony in conjunction with the treatment notes of neurologist

Enrique Esnard, M.D. establish that migraine headaches were a severe impairment. *Id.*

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1508 (1991).

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work...." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing

with changes in a routine work setting.  20 C.F.R. § 404.1521(a) (1985);[1] SSR 85-28.[2]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ concluded that Plaintiff had several severe impairments, including cervical and lumbar degenerative disc disease; bilateral shoulder impingement; depressive disorder, NOS; anxiety disorder, NOS; PTSD; and borderline personality disorder.  Tr. 22.  Specifically, the ALJ concluded that her migraine headaches have not caused more than a minimal limitation in

_____

[1] As of March 27, 2017, 20 C.F.R. § 404.1521 was amended.  The Court applies the version that was in effect at the time of the ALJ's decision.

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 23

Plaintiff's ability to perform work activities and thus, was not a severe condition. Tr. 25. In so finding, the ALJ found that the treatment records demonstrated it was a minimal problem for Plaintiff. Specifically, he noted that she had seen a neurologist twice, and the neurologist reported that her migraines were controlled with medication. Tr. 25 (citing Tr. 432-39 (June 15, 2016 treatment note: noting Plaintiff reported prior improvement of migraines with Imitrex and prescribing Lamotrigine); *see also* Tr. 560-64 (September 27, 2016 treatment note: Plaintiff's migraines have improved to sharp pains one a week, she has no side effects from medication, and headaches are "much better" with Lamotrigine)). The ALJ further noted that Plaintiff rarely complained about migraines to other treatment providers. Tr. 25 (citing *e.g.*, Tr. 482 (April 2014 treatment note: Plaintiff presented for sinusitis, negative/no reporting of headaches); Tr. 484 (June 2014 treatment note: Plaintiff presented for low back pain, negative/no reporting of headaches); Tr. 487 (Sept. 2014 treatment note: Plaintiff presented for back pain, negative/no reporting of headaches)). The ALJ further noted that Plaintiff only required emergent treatment for migraines once or twice during the entire adjudicative period, which the ALJ found was inconsistent with the severity and frequency of migraines she alleged at the hearing. Tr. 25.

Moreover, in concluding Plaintiff's migraines were non-severe, the ALJ gave the assessment of medical expert H.C. Alexander, III, M.D. great weight, Tr.

24-25, 29, who concluded her migraines were not a severe impairment. Tr. 45.

Dr. Alexander noted that Plaintiff sought minimal treatment for migraines and the

record as a whole did not support a finding that migraines were a severe

impairment. Tr. 24. Here, the ALJ reasonably relied on treating physician Dr.

Esnard's opinion that Plaintiff's migraines were well controlled with medication

and the expert medical opinion of Dr. Alexander that the migraines were non-

severe. Furthermore, Plaintiff does not challenge the ALJ's evaluation of Dr.

Alexander's opinion, ECF No. 15 at 4-15, so challenge is waived. *See Carmickle*,

533 F.3d at 1161 n.2.

Plaintiff contends the evidence satisfying her burden of proving a severe

mental impairment includes her testimony that she experiences significant

migraines, and Dr. Esnard's diagnosis and notations regarding the frequency of her

migraines. ECF No. 15 at 10-14. As noted *supra*, the ALJ properly found

Plaintiff's symptom complaints were inconsistent with the record. Tr. 28.

Moreover, a diagnosis alone does not establish the existence of a severe

impairment and Plaintiff fails to identify how her migraines had a more than slight

functional impact. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); 20

C.F.R. § 404.1521 (2010).

Even if the failure to list an impairment as severe was error, the error would

be harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to

identify any credited limitation associated with migraines that was not considered by the ALJ and incorporated into the RFC at step four. *See Stout*, 454 F.3d at 1055; *Burch*, 400 F.3d at 682. The ALJ accorded significant weight to the medical expert Dr. Alexander and the notes of treating physician Dr. Esnard, findings which Plaintiff does not challenge. ECF No. 15 at 4-15. The ALJ's step two finding is legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is GRANTED.

3. The Court enters JUDGMENT in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED September 14, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 26